# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD MACKINAW, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. CIV-14-541-R |
| | ) |
| CAROLYN W. COLVIN, acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff filed this action seeking review of the decision of the Commissioner denying his application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(b)(1)(B), the matter was referred to United States Magistrate Judge Suzanne Mitchell for preliminary review. On June 19, 2015 Judge Mitchell issued a Report and Recommendation wherein she recommended that the decision of the Commissioner be affirmed. The matter is currently before the Court on Plaintiff's objection to the Report and Recommendation, giving rise to the Court's obligation to conduct a *de novo* review.

## Evaluation Process

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is "disabled" under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). The Commissioner follows a five-step evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). In the first four steps of this process, the claimant bears the burden of establishing a prima facie case of his disability. *Id.* at 751 & n.2. If he succeeds, the fifth step involves "determining whether the claimant has the residual functional capacity (RFC) 'to perform other work in the national economy in view of his age, education, and work experience.'" *Id.* at 751 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987)).[1] At this step, the burden shifts to the Commissioner to establish that despite the claimant's medical impairments, he "retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citations and internal quotation marks omitted).

## **Background**

Plaintiff's date last insured ("DLI") was September 30, 2010. AR 33. Therefore, he has the burden of establishing he was disabled "on that date or before." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). The ALJ determined Plaintiff had, through the DLI, lumbar spinal stenosis, a severe impairment. AR 33. But she also determined he had the RFC to perform light work with occasional stooping, kneeling, and crouching, that he could lift/carry ten pounds frequently and twenty pounds occasionally, he could walk/stand up to six of eight hours with normal breaks, and he could sit up for up to six

---

[1] One's RFC is the most that individual can do despite his/her limitations. 20 C.F.R. § 404.1545(a)(1).

of eight hours. *Id.* 35. The ALJ found that through the DLI, Plaintiff could perform his previous jobs as a waiter and greeter. *Id.* at 38. Therefore, she concluded Plaintiff was not disabled for the relevant time period, from August 18, 2008, the alleged onset date, to September 30, 2010, the DLI. *Id.* at 38.

## Standard of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson*, 602 F.3d at 1140 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted).

## Analysis

Plaintiff challenges the Report and Recommendation on two grounds. First, he argues the Administrative Law Judge ("ALJ") failed to adequately explain why she rejected Dr. Graham's, his treating physician's, opinion concerning Plaintiff's RFC. Second, he contends the ALJ's finding regarding his lack of credibility concerning the disabling effect of his pain is described in boilerplate language and is not supported by substantial evidence.

### A. Dr. Graham's August 2012 RFC Questionnaire

Dr. Graham completed a Lumbar Spine Residual Functional Capacity Questionnaire on August 24, 2012. AR 535. She opined Plaintiff could stand for only fifteen minutes at a time, sit for only thirty minutes at a time, and should have his leg(s) elevated forty-five degrees during periods of prolonged sitting and for twenty-five

3

percent of an eight-hour sedentary work day. *Id.* at 538-39. She also determined that during an eight-hour work day, Plaintiff must walk every fifteen minutes for two minutes each time. *Id.* According to Dr. Graham, Plaintiff needs a job that permits shifting his position at will from sitting, standing, or walking. *Id.* at 539. She opined he can occasionally lift and carry ten pounds or less, but should never lift and carry twenty pounds or more. *Id.* at 539. Finally, Dr. Graham concluded Plaintiff is likely to be absent from work more than three times per month as a result of his impairment or treatment. *Id.* at 540. The ALJ gave this opinion little weight because Dr. Graham completed the questionnaire almost two years after the DLI, and her contemporaneous treatment notes for the relevant period, August 18, 2008 to September 30, 2010, did not include any of the limitations noted in the questionnaire. *Id.* at 37-38.

Plaintiff asserts the ALJ should have considered the limitations Dr. Graham included in the August 2012 questionnaire when determining Plaintiff's RFC. The Court finds no error on the ALJ's part in this regard. Dr. Graham completed this questionnaire almost two years after Plaintiff's DLI and gave no indication that it was intended to provide a retrospective opinion on the limitations caused by Plaintiff's spinal stenosis.[2] In fact, Dr. Graham did not answer the question on the form asking for "the earliest date that the description of symptoms and limitations in this questionnaire applies." AR 540.

---

[2] Dr. Graham did include in the questionnaire a reference to an MRI done on February 3, 2010. AR 536. But this was in response to a question asking her to identify clinical findings or test results that show Plaintiff's medical impairment, not the symptoms associated with that impairment. *Id.* According to Dr. Graham, the MRI "shows stenosis at L3-L4 [and] L4-L5." *Id.* The ALJ agreed with the conclusion that Plaintiff has lumbar spinal stenosis, but disagreed with Dr. Graham as to the severity of the symptoms associated with that condition.

"[T]he relevant analysis is whether the claimant was actually *disabled* prior to the expiration of [his] insured status." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (citation omitted). The questionnaire on its own does not support the fact that Plaintiff was disabled during the relevant time period. And Dr. Graham's contemporaneous notes do not adequately support the limitations described in the questionnaire. The notes consistently state Plaintiff has "[t]enderness with palpation in the lumbar region and [] has limited range of motion due to pain." AR 476, 478, 480-81, 483-88. But Plaintiff does not point to, and the Court does not find, any notes of Dr. Graham that support the extent of the limitations she listed in August 2012. Therefore, the ALJ did not err in rejecting her opinion regarding Plaintiff's limitations as expressed in the questionnaire. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings. The ALJ rejected the treating physician's opinion here because the treating physician's own office records did not support his later expressed opinion that plaintiff was totally disabled." (internal citations omitted)).

Plaintiff contends the ALJ did not sufficiently consider all of the *Drapeau* factors before rejecting his treating physician's opinion about his RFC. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing § 401.1527(d)(2)). "When an ALJ rejects a treating physician's opinion, [s]he must articulate 'specific, legitimate reasons for h[er] decision.'" *Id.* (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Id.* (footnote and citation omitted). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau*, 255 F.3d at 1213.

There is no requirement that an ALJ expressly consider all six *Drapeau* factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). "Not every factor for weighing opinion evidence will apply in every case." *Id.* (citing Social Security Ruling 06-03p). Here, the ALJ could have reasonably concluded that the factors were "largely irrelevant and not worthy of discussion" because Dr. Graham's opinion about Plaintiff's limitations in August 2012 is irrelevant to the issue of whether Plaintiff was disabled from August 18, 2008 to September 30, 2010. *Cf. Andersen v. Astrue*, 319 F. App'x 712, 718 n.2 (10th Cir. 2009) (unpublished) ("[T]he ALJ could have reasonably determined that most of the explicit treatment-related and physician-related regulatory factors … were largely irrelevant and not worthy of discussion, because the treating physicians offered their

opinions based upon Ms. Oldham's false premises."). The ALJ provided a good reason for the weight she accorded the August 2012 questionnaire, and "[n]othing more was required in this case. *Oldham*, 509 F.3d at 1258.

### B. ALJ's Credibility Finding

Plaintiff next argues the ALJ's finding regarding his credibility is expressed in boilerplate language and is not supported by substantial evidence. In assessing the credibility of a claimant who alleges a pain-producing impairment, the ALJ must determine, after considering both the objective and subjective evidence, whether the claimant's pain is actually disabling. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012). The ALJ should consider such things as "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems." *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (citations omitted). Additional factors include "the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Id.* at 166. "[S]o long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility, [s]he need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation omitted). "[C]ommon sense, not technical perfection, is our guide." *Id.*

The ALJ noted that no physician had recommended surgery for Plaintiff's condition, his pain medication had been prescribed by a primary care physician, rather than a pain management specialist, and different providers concluded Plaintiff had

7

exaggerated his symptoms. AR 35-36. She also pointed to evidence that physicians found he could return to work, he required no additional physical therapy, and there were no recommendations for future "conservative or surgical intervention." *Id.* Plaintiff has not directed the Court to any evidence in the administrative record that, when considered with all of the evidence as a whole, would demonstrate a lack of substantial evidence for the ALJ's credibility finding.[3] Although he takes issue with the ALJ's boilerplate language—that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible"[4]—as Judge Mitchell correctly notes, "use of such boilerplate is problematic only when it appears in the absence of a more thorough analysis." *Keyes-Zachary*, 695 F.3d at 1170 (citation and internal quotation marks omitted). "Because there is no indication that the ALJ misread the medical evidence as a whole, deference must be given to the ALJ's determination of the claimant's credibility." *Norris v. Barnhart*, 152 F. App'x 698, No. 05-7002, 2005 WL 2375204, at *5 (10th Cir. Sept. 28, 2005) (quoting and adopting magistrate judge's analysis).

---

[3] *See Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (unpublished) ("Mr. Suttles has not presented an adequately developed challenge to that aspect of the ALJ's decision. Save for two patently meritless objections, he does not challenge particular aspects of the ALJ's discussion of the evidence, nor cite to specific evidence in the record that the ALJ should have but did not address." (footnote omitted)); *McAnally v. Astrue*, 241 F. App'x 515, No. 07-7010, at *2 (10th Cir. July 23, 2007) (unpublished) ("[W]e agree with the magistrate judge that … the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitations." (quoting Magistrate Judge) (citation and internal quotation marks omitted)); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Ms. Threet does not identify which treating physician she feels was ignored, and we will not speculate on her behalf.").

[4] AR 35.

**Conclusion**

In accordance with the foregoing, the Report and Recommendation of the Magistrate Judge, Doc. No. 26, is ADOPTED in its entirety. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED this 20th day of August, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE